UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| OBERDEEN CLICK, | ) |
| | ) |
| Plaintiff, | )   Civil No. 12-32-ART |
| | ) |
| v. | ) |
| | )   **MEMORANDUM** |
| RANDY THOMPSON, | )   **OPINION & ORDER** |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Tip O'Neill insisted that, "All politics is local." *See* Tip O'Neill & William Novak, Man of the House: The Life and Political Memoirs of Speaker Tip O'Neill (1987). The parties here probably wish that were not the case. Oberdeen Click, the Plaintiff, alleges that, Randy Thompson, the Defendant, fired him from his job with the county parks department in 2009 because he supported the Democratic Party. Click further alleges that Thompson refused to rehire him in 2011 and again in 2012 because he refused to stop supporting local Democratic candidates. Thompson asserts that the Court need not reach the substance of these allegations because the statute of limitations bars Click's suit. However, Click's claim based on Thompson's alleged refused to rehire him in 2012 is timely. Click's complaint therefore survives the motion to dismiss—but only on that claim.

## BACKGROUND

The Plaintiff, Oberdeen Click, was a dyed-in-the-wool Democrat who worked for the Knott County Department of Parks. R. 1 ¶¶ 6, 11. His boss, Defendant Randy

Thompson, was a recent convert of the Republican Party and the Knott County Judge/Executive.  R. 1 ¶¶ 8–9; *see also* KRS §§ 67.700, 710 (establishing Judge/Executive as an elected position heading the county government's executive branch).  Click worked hard for local Democratic candidates in the 2006 and 2010 elections.  He voiced support for Democratic candidates, participated in Democratic campaign activities, and associated with Democratic organizations.  R. 1 ¶¶ 10–11.  According to Click's complaint, Thompson fired Click in 2009, citing Click's political activities as the sole basis for his termination.  R. 1 ¶ 14.  Thompson then allegedly offered to rehire Click in 2011, but only on the condition that he "keep his mouth shut" and no longer support Democratic candidates.  R. 1 ¶ 15.  Click refused and was not rehired when he applied.  *Id.*  Click reapplied to the Department of Parks again in 2012 and was again allegedly rebuffed when he refused to swear off support for Democratic candidates.  R. 16.

Click filed suit on March 23, 2012.  *Id.*  The complaint seeks damages against Thompson in both his official and individual capacities under 42 U.S.C. § 1983 and Kentucky law.  R. 1 ¶¶ 2, 19–38.  Click's Section 1983 claims rest on the theory that Thompson's terminating and then refusing to rehire him based on his political beliefs violated Click's federal constitutional rights.  R. 1 ¶¶ 20–32.  His Kentucky-law claims rest on the same basic theory, only they assert Thompson violated Click's

rights under the Kentucky Constitution. R. 1 ¶¶ 33–38. Thompson now seeks to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6).[1] R. 5; R. 7.

## DISCUSSION

### I. Standard

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the Court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (quotation omitted).

### II. Section 1983 Claim – Failure to Rehire as a Cause of Action

The First Amendment protects, among other things, low-level government employees from employment actions that burden their rights of free expression and association. Government employers may therefore not make employment decisions based on political loyalty, unless such political patronage is "narrowly tailored to further vital government interests." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 74 (1990). This constitutional bar extends to "promotions, transfers, and recalls after layoffs based on political affiliation or support" where the job at issue is a non-political position. *Id.* at 75. Government employers also may not penalize public

---

[1] Thompson's motion cites both Rule 12(c) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* R. 5 at 1, 4. However, at oral argument defense counsel conceded that the motion should be construed as a motion to dismiss under Rule 12(b)(6).

3

employees for exercising their right "to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (collecting cases).

Thompson asserts that Click has no cognizable First Amendment claim based on Thompson's refusal to rehire him. He argues that his refusal to rehire Click is not the kind of "adverse employment action" that triggers First Amendment protection. *See* R. 5 at 4–5 (citing, inter alia, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003)). Thompson insists that there is a distinction between a refusal to hire (which he concedes would be actionable) and a refusal to rehire. *See* R. 5 at 5.

Thompson's argument puts more weight on the prefix "re" than those two letters can bear. The Constitution forbids government from leveraging its economic power against individuals' political consciences. That prohibition does not expire after one stint of public employment. In *Rutan*, the Supreme Court held that it would be "unduly restrictive" to limit plaintiffs to bringing claims only where the employment action was the "substantial equivalent of a dismissal." 497 U.S. at 75 (internal citation and quotation omitted). Thompson's argument makes the same mistake by attempting to limit plaintiffs to the substantial equivalent of a retaliation claim. *See* R. 5 at 4–5. *Rutan*'s reasoning forbids such a limit. The Court emphasized that the First Amendment is "not a tenure provision" but a guarantee that the government will not "press state employees *and applicants* to conform their beliefs and associations to some state-selected orthodoxy." 497 U.S. at 75–76 (emphasis added) (citing *Elrod v. Burns*, 427 U.S. 347, 356–57 (1976) (plurality opinion); *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). *Rutan* thus held that the First Amendment forbade the Illinois government's policy of "patronage

4

promotions, transfers, and *rehires*." 497 U.S at 74 (emphasis added). Thompson offers no principled distinction between his failure to rehire Click in 2012 and the Illinois government's refusal to rehire laid off employees in *Rutan*. Imagine if a government employer had fired a civil servant because of her race and then refused to hire her two years later, again on account of her race. Under Thompson's theory the imaginary plaintiff would have no claim. No one would say that the violation of equal protection was not actionable. Why should it be any different if the employer violates the right to free expression?

Instead of justifying the logical implications of his rule, Thompson falls back on the language of prior cases. He cites several Sixth Circuit cases addressing failure-to-rehire claims. Those cases describe adverse employment actions as including "discharges, demotions, refusal to hire, non-renewal of contracts and failure to promote." R. 5 at 5. He reasons that the absence of the term "refusal to rehire" in these Sixth Circuit cases means that Click has no cause of action. None of the cases Thompson cites, however, actually hold that a failure to rehire is not an adverse employment action. S*ee Leary*, 349 F.3d at 897, 900–01; *Thaddeus-X v. Blatter*, 175 F.3d 378, 393–99 (6th Cir. 1999); *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 795–800 (6th Cir. 2004). And it makes sense that courts have not listed "failure to rehire" when brainstorming potential adverse employment actions in dicta. Most employees who believe their employers discriminated against them are unlikely to seek reemployment. So a suit based on such an unlikely scenario is not likely to come to mind when listing potential adverse employment actions. More fundamentally, Click is not necessarily limited to the strictures of a retaliation claim.

5

His complaint asserts that Thompson deprived him of his constitutional rights. *See* R. 1 ¶ 29. And the Supreme Court has held that when the government exercises its powers as an employer, it may not do so in a way that "places burdens on free speech and association." *Rutan*, 497 U.S. at 77. Like the plaintiffs in *Rutan*, Section 1983 supports Click's claim to redress for a violation of his constitutional rights. *See id.* at 76.

Finally, Thompson argues that allowing Click to bring a claim based on a failure to rehire would "trivialize the application of the statute of limitations." R. 5 at 5. This might be true if Click had alleged that Thompson made a single decision to ban Thompson from county employment in 2009 and that the 2011 and 2012 incidents were simply consequences of that decision. *See Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (explaining that it would undermine the statute of limitations to allow "continuing ill effect[s]" from a single discrete action to restart the clock); *see also Cox v. City of Memphis*, 230 F.3d 199, 205 (6th Cir. 2000) (explaining that an action by the employer, and not just an effect from a prior decision, is necessary or else plaintiffs could "sit on their rights" and "expose employers to a virtually open-ended period of liability" (quoting *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 534 (5th Cir. 1986)). For example, if Click chose not to reapply in 2011 and 2012 because he believed it would be futile, that would be a continuing effect for which he would have no claim. But Click alleges that Thompson made three separate decisions about employing him. *See* R. 1 ¶¶ 14–16. Each one of those alleged decisions was an independent violation of Click's constitutional rights give rise to its own cause of action. Otherwise, the

6

statute of limitations would become a blank check for government employers to blatantly discriminate against individuals whose rights they had violated more than a year earlier.

The fact that every decision was an individual act also means that any liability that arose in 2011 and 2012 was not a product of Thompson's 2009 decision. Statutes of limitations often serve to eliminate the specter of liability that might otherwise loom after a questionable action. *See* Cox, 230 F.3d at 205 (citing the elimination of "substantial uncertainty" moving forward as a justification for a statute of limitations). Thompson did not need such protection. He could have easily avoided further exposure to liability after 2009 by simply refusing to hire Click for legitimate reasons. Thompson could have rejected Click's application because he was incompetent, or because the position was already filled, or because of any other constitutionally permissible reason. However, according to Click's allegation, Thompson chose to act for a constitutionally impermissible reason. Consequently, Click's claim is cognizable under Section 1983.

### III.   Section 1983 Claim – Statute of Limitations

Section 1983 lacks its own statute of limitations and tolling provisions. Federal courts thus determine a Section 1983 suit's timeliness by looking to the state law of the district where the suit is filed. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985)). The Sixth Circuit has determined that the relevant statute of limitations in Kentucky is one year. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 181–82 (6th Cir. 1990) (holding that the one-year period in KRS § 413.140 governs, not the five-year period in KRS

7

§ 413.120(6)).  While Click questions the logic supporting *Collard*, *see* R. 6 at 9–10 & n.4, he cannot dispute that *Collard*'s conclusion binds this Court.  *Bonner v. Perry*, 564 F.3d 424, 430–31 (6th Cir. 2009).

Thompson argues that the one-year limitation bars Click from bringing a suit in March of 2012 based on his termination in November of 2009 and Thompson's refusal to rehire him in 2011.[2]  *See* R. 5 at 4.  There is, however, a "narrowly limited" exception to the normal statute of limitations for some discrimination claims.  *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992) (quotation omitted), *partially abrogated by Nat'l R.R. Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101, 111–14 (2002).  The so-called continuing-violations doctrine tolls the statute of limitations in cases where the Defendant engages in a "longstanding and demonstrable policy of discrimination."  *Sharpe v. Cureton*, 319 F.3d 259, 266–68 (6th Cir. 2003) (holding that this category of continuing violation was "not implicated by *Morgan*").  The Sixth Circuit has advised that this exception will "rarely" extend to Section 1983 actions.  *Id.* at 267–68 (explaining that the much longer statute of limitations for Section 1983 actions minimizes the need for a continuing-violations exception compared to the relatively short deadlines for Title VII claims); *Tolbert*, 172 F.3d at 940; *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995) (citing *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 (5th

---

[2] While the refusal to rehire in 2011 would fall within the statute of limitations if it occurred after March 23 of that year, Click never challenges Thompson's claim that the 2011 refusal happened more than a year before the lawsuit was filed.  Therefore, Click has not provided the necessary "factual content" to support an inference that he has a viable claim against Thompson for the 2011 refusal to rehire.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

8

Cir. 1993); *see also McGregor*, 3 F.3d at 866–67 & n.7 (collecting rationales from various cases).

Click's complaint alleges that Thompson violated his rights by making three separate hiring decisions in three different years. While those decisions were related, they were still sufficiently "discrete acts of discrimination or retaliation" that the continuing-violations doctrine does not apply. *Sharpe*, 319 F.3d at 267. As the name indicates, the continuing-violations doctrine requires that the violation be continuous. Thompson's alleged violations were not. When Thompson terminated Click in 2009, he did not continue to actively burden Click's constitutional rights. *Compare Tolbert*, 172 F.3d at 940 ("Passive inaction, however, does not support a continuing violation theory."), *with Baar v. Jefferson Cty. Bd. of Educ.*, 311 F. App'x 817, 823 (6th Cir. 2009) (allowing teacher to proceed with challenge to school board's disciplinary action that barred him from attending a professional teaching organization's meetings "for *all* time" even though the bar began more than one year before the suit). Similarly, Click does not allege that Thompson took further action after denying his application in 2011. *Compare* R. 1 ¶ 15 (simply stating that Thompson "refused to re-hire Plaintiff"), *with Sharpe*, 319 F.3d at 267 (noting that hostile environment claims can qualify as continuing violations because they "cannot be said to occur on any particular day, but occur over a series of days or years"). Instead, Click alleges a course of conduct that the Sixth Circuit has called "serial violations," a series of related yet discrete employment actions that occur over a period of time. *Id.* at 266–68. That allegation cannot save his time-barred claims. *Id.* (holding that *Morgan* has foreclosed the serial-violations theory).

Nor does Click allege that Knott County had the kind of formally established and widely applied policy that sometimes qualifies as a continuing violation. He never claims that Thompson issued a written order directing county departments to not hire Democrats. *Compare Haithock*, 958 F.2d at 679 (citing a discriminatory state code and affirmative action plan as example of a continuing violation), *with* R. 1 ¶¶ 14–19 (not mentioning anything approaching a formal policy of discrimination in describing Thompson's actions). Nor does he allege that Thompson's "standing operating procedure" was to screen Democrats out of county jobs. *EEOC v. Penton Indus. Publishing Co.*, 851 F.2d 835, 838 (6th Cir. 1988) (citations omitted), *compare* R. 1 ¶ 26 (failing to allege that any other individuals were turned down or fired by Thompson for political reasons, or asked about their political affiliation during an interview). Even if Click had made such an allegation, it probably would not have saved his claims based on the 2009 and 2011 incidents. *See Cox*, 230 F.3d at 202–03 (holding that an employer engaging in several rounds of promoting employees based on an "allegedly tainted eligibility list" was not a "continuing act").

Click's Section 1983 claims based on the 2009 termination and 2011 failure to rehire are therefore time-barred. However, because the 2012 failure to rehire is a discrete act that falls within the one-year limit, Click may proceed to discovery on that claim.

### IV. Supplemental Jurisdiction on State-Law Claim

Since Click's federal claim for the 2012 failure to rehire does survive the motion to dismiss, supplemental jurisdiction over his state-law claims remains proper, *see* 28 USC §1367(a).

10

## CONCLUSION

The statute of limitations bars suit based on the alleged incidents in 2009 and 2011. The time for those claims has come and gone. But the 2012 claim is timely. Throwing that claim out would transform Section 1983's statute of limitations into a blank check for violating the very federal rights that statute exists to protect. Accordingly, it is **ORDERED** that:

(1) The Defendant's Motion to Dismiss, R. 5, is **GRANTED IN PART** and the Plaintiff's Section 1983 claims based on the 2009 and 2011 incidents are **DISMISSED**.

(2) The Defendant's Motion to Dismiss, R. 5, is **DENIED IN PART** and the Plaintiff's Section 1983 claims based on the 2012 incident, as well as his state-law claims based on all three incidents, may proceed.

This the 18th day of October, 2012.

Signed By:
*Amul R. Thapar*  AT
United States District Judge