UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| OBERDEEN CLICK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-32-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RANDY THOMPSON, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff has filed a motion for leave to amend his complaint. R. 17. The changes in his amended complaint are meant to salvage the claims that the Court dismissed on statute of limitations grounds in its earlier Memorandum Opinion and Order. *Id.* at 1−2; *see also* R. 11 at 7−11 (dismissing Click's damages claims for alleged adverse employment actions in 2009 and 2011 because the statute of limitations had run). Because the plaintiff's proposed amendment salvages his time-barred claims, the Court will grant the motion.

## BACKGROUND

Plaintiff Oberdeen Click's original complaint accused the defendant, Randy Thompson, of firing Click from his civil service job in 2009 and then refusing to rehire Click in 2011 and 2012. R. 1 at 4−5 ¶¶ 14−16. The complaint claims that Thompson, a Republican, did so because Click supported Democratic candidates in local elections. *See id.* If true, Thompson's actions violated Click's First Amendment rights. *See* R. 11 at 3−7 (citing, *inter alia*, *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)).

Thompson filed a motion to dismiss which argued that Click's § 1983 claims were barred by the governing statute of limitations.  R. 5.  This Court granted the motion with respect to the § 1983 claims based on the alleged incidents in 2009 and 2011.  It denied the motion with respect to the § 1983 claims based on the alleged 2012 incident and Click's state-law claims.  *See* R. 11 at 11.  Click has now filed a motion for leave to file an amended complaint.  R. 17.  His proposed amendment seeks to salvage his § 1983 claims based on the 2009 and 2011 incidents.  *Id.* at 1–2.  Thompson opposes the motion.  R. 18.

## DISCUSSION

Click moves to amend his complaint under Federal Rule of Civil Procedure 15.  R. 17 at 2.  Click requests leave to amend 315 days after filing his original complaint, 176 days after Thompson filed his motion to dismiss, and 100 days after Thompson filed his responsive pleading.  *Compare* R. 17 (filed Feb. 1, 2013), *with* R. 1 (filed March 23, 2012), *and* R. 5 (filed Aug. 9, 2012), *and* R. 12 (filed Oct. 24, 2012).  So the window for amending his complaint as a matter of course has closed.  *See* Fed. R. Civ. P. 15(a)(1)(A), (B) (establishing window in which plaintiffs may amend as of right).  Click may now amend his complaint only with Thompson's written consent or the Court's permission.  Fed. R. Civ. P. 15(a)(2).  Since Thompson opposes the motion, R. 18, the Court must consider whether justice requires that leave be granted.  *See* Fed. R. Civ. P. 15(a)(2).

Rule 15(a)(2) favors granting leave to amend to allow a plaintiff "an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Thompson does not claim that Click's motion was filed with improper motives, would result in undue delay, or would prejudice the defendant.  *See* R. 18; *see also Crawford v. Roane*, 53 F.3d 750, 753

2

(6th Cir. 1995) ("A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, [or] results in undue delay or prejudice to the opposing party . . . ." (citation omitted)).  And the Court's own review of the record reveals no reason to deny the amendment on equitable grounds.  However, the Court may still deny the motion if the proposed amendment does not correct the complaint's fatal flaws.  *See Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006) ("A district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile." (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003))).  The controlling issue, therefore, is whether the proposed amendment would rescue Click's claims based on the 2009 and 2011 incidents.

Since both the 2009 and 2011 incidents fall outside the one-year statute of limitations for Click's § 1983 suit, his only means to bring claims based on those incidents is the continuing-violation doctrine.  *See* R. 11 at 7−10; *see also Sharpe v. Cureton*, 319 F.3d 259, 266−67 (6th Cir. 2003) (explaining that the doctrine allows plaintiffs in Title VII and § 1983 actions to have the court consider allegations that would otherwise be barred by the statute of limitations).  There are two distinct categories of continuing violations.  *See Sharpe*, 319 F.3d at 266−67.  The first category arises with allegations of "prior discriminatory activity that continues into the present."  *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003).  The paradigmatic example is a hostile work environment claim, where the cumulative effect of the acts manifests over time and not at one particular moment.  *See Baar v. Jefferson Cnty. Bd. of Educ.*, 311 F. App'x 817, 824 (6th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).  The second category arises where the plaintiff can

3

establish "a long-standing and demonstrable policy of discrimination." *Burzynski v. Cohen*,

264 F.3d 611, 618 (6th Cir. 2001).   The Court's earlier Memorandum Opinion and Order

found that Click's allegations had not alleged either category of continuing violation.  *See*

R. 11 at 7–10.

Only the second category of continuing violation is relevant to Click's amended

complaint.   *See* R. 17-1 at 4–6 ¶¶ 15–20.   The amended complaint still alleges that

Thompson made two discrete decisions with discrete consequences—terminating Click in

2009 and refusing to rehire him in 2011.  *See id.* at 5–6 ¶¶ 19–20.   Those alleged actions

cannot qualify for the first category of continuing violation because they were individual acts

on identifiable days.   *See Sharpe*, 319 F.3d at 267 (explaining that the first category of

continuing violations "cannot be said to occur on any particular day, but occur over a series

of days or years").   Instead, Click's proposed amendments rely on the second category.   The

amended complaint alleges that Thompson:

> deliberately adopted, continued, created, sanctioned, embraced, pursued and/or
> implemented a formal, county-wide policy, and issued both generally
> applicable and employee-by-employee specific orders, requiring and/or
> encouraging the coercion and discrimination of public employees such as
> Plaintiff, and others similarly holding non-policymaking positions, by
> terminating, harassing, threatening and discouraging the continued
> employment and re-hiring of those public employees who were known
> supporters of the county judge-executive's political opponents . . . .

R. 17-1 at 4 ¶ 15.  It further alleges that, because of this policy, Thompson terminated Click

in 2009 and refused to rehire him in 2011.  *Id.* at 5–6 ¶¶ 19–20.  And it claims that other civil

service workers and applicants suffered the same treatment under this policy.  *Id.* at 5 ¶ 17.

4

The question is whether these allegations claim "a long-standing and demonstrable policy of discrimination." *Burzynski*, 264 F.3d at 618.

Consideration of the case law, conducted in light of Click's amended allegations, reveals that they do. Thompson's objection to Click's amendment focuses on the fact that Click does not allege that there was a written policy fencing Democrats out of the civil service. *See* R. 18 at 1–2. To be sure, the Sixth Circuit has often pointed to formal, codified policies as examples of the second category of continuing violation. *See, e.g.*, *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992) (citing *Dixon* and *Conlin*). But it has never held that a policy must be written down to qualify as "a long-standing and demonstrable policy of discrimination." *Burzynski*, 264 F.3d at 618.

In fact, the Sixth Circuit has often held that unwritten policies—very similar to the one outlined in Click's amended complaint—qualify as continuing violations. In *Roberts v. North American Rockwell Corp.*, the plaintiff repeatedly applied for a job at the defendant's axle plant and was "repeatedly told that she would not be hired because she was a woman." 650 F.2d 823, 824–25 (6th Cir. 1981). The court found that the defendant's refusal to hire women was a "discriminatory policy" and held that "[i]f an ongoing discriminatory policy is in effect, the violation of Title VII is ongoing as well." *Id.* at 827. In *Alexander v. Local 496, Laborers' International Union of North America*, a union had a decades-long practice of selectively enforcing its written rules to exclude African-American applicants. *See* 177 F.3d 394, 400–01, 408 (1999). The court found that this practice was "an established policy of discrimination" and thus a continuing violation. *Id.* at 408. The Sixth Circuit has also noted, albeit in dicta, that "an established and repeated pattern of paying men more than women"

5

would qualify as a continuing violation.  *EEOC v. Penton Indus. Pub. Co., Inc.*, 851 F.2d 835, 838 (6th Cir. 1988).  Thompson's alleged directives are similar to the unwritten practices of the employers in these cases.  According to Click's amended complaint, Thompson ordered that the Knott County government "screen out" all civil service employees and applicants who supported Thompson's opponents.  R. 17-1 at 5 ¶ 16.  At the outset of the litigation, such a claim qualifies as an allegation of a continuing violation. Therefore, Thompson's proposed amendment salvages his time-barred claims.  *See Kottmyer*, 436 F.3d at 692 (explaining that leave may be granted where it would "further the [plaintiff's] constitutional claims").

Perhaps these cases could be distinguished from Click's on the grounds that they all involved Title VII and not § 1983.  The Sixth Circuit has frequently stressed that it applies the continuing-violations doctrine "most commonly in Title VII cases, and rarely extends it to § 1983 actions."  *See Sharpe*, 319 F.3d at 267 (citing *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106 n. 3 (6th Cir. 1995)).  But the court of appeals has never given any firm guidance as to where the line between Title VII claims and § 1983 actions might lie. And it has applied the second category of continuing violations to § 1983 claims.  *See id.* at 268–69 (considering whether plaintiff firemen's § 1983 claim qualified as a second-category continuing violation, but concluding based on the facts that it did not).  In light of *Sharpe*, Click can rely on the second category of continuing violation to counter Thompson's statute of limitations argument.

But the fact that Click's 2009 and 2011 claims are back in play does not mean these claims have an easy path to trial.  Plaintiffs asserting a second-category continuing violation

carry a special burden.  They must establish that the alleged policy was:  (1) a "form of intentional discrimination"; (2) applied "against the class of which plaintiff was a member"; and (3) as "standing operating procedure."  *Penton*, 851 F.2d at 838 (quotation omitted). That requires proving more than discrimination against the plaintiff.  The *Sharpe* court's holding that the plaintiff had not established a discriminatory policy is instructive.  *See* 319 F.3d at 268−69.  The firefighter plaintiffs alleged that the mayor had maintained a policy of disregarding worker's constitutional rights for three decades.  *See id.* at 260.  The court held that the record did not support their allegation because, out of the hundreds of firefighters and thousands of city workers employed over the alleged three-decade-long period of discrimination, the plaintiffs produced just one retired firefighter, and he testified only that there were allegations of patronage in the late 1980's.  *See id.*; *see also Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987) (refusing to apply the continuing-violation doctrine where there was "no over-arching policy of discrimination against fifty year olds"). Therefore, Click must produce evidence showing more than isolated or sporadic acts of discrimination; rather, he must show that discrimination against those who supported Thompson's political opponents was "standard operating procedure."  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).  Otherwise, Click cannot rely on the continuing-violation doctrine.

## CONCLUSION

Accordingly, it is **ORDERED** that the plaintiff's motion for leave to amend the compliant, R. 17, is **GRANTED**.  The Clerk shall **DOCKET** the first amended complaint tendered by the plaintiff, R. 17-1, as the complaint in this matter.

This the 1st day of March, 2013.

Signed By:

*Amul R. Thapar*

United States District Judge