UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| OBERDEEN CLICK, | ) | CIVIL ACTION NO. 7:12-32-KKC |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| RANDY THOMPSON, *Individually and* | ) | |
| *In his Official Capacity as* | ) | |
| *Judge-Executive of Knott County, KY* | ) | |
| DEFENDANTS | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the defendants' Motion for Summary Judgment (DE 40). For the following reasons, the motion will be granted.

**I.    Introduction**

Plaintiff Oberdeen Click is a Democrat who worked for the Knott County Department of Parks while defendant Randy Thompson was the county's judge/executive, which is an elected position. *See* KRS § 67.700. Click began working for the county in 2002. According to Click, his duties largely consisted of mowing the grass. (DE 48-2, Click Statement at CM-ECF p. 2; DE 38, Click Dep. at CM-ECF p. 17.) He performed certain other tasks as needed (DE 38 Click Dep. at CM-ECF p. 17, 25), but Click testified on two separate occasions that his main duty was mowing the grass and that is consistent with additional affidavits in the record. (DE 48-2, Click Statement at CM-ECF p. 2; DE 38, Click Dep. at CM-ECF p. 17; DE 54-1, Mosley Aff.; DE 54-52, Weinberg Aff.; DE 40-2, Mullins Aff.; DE 40-3, Chaffins Aff.)

Thompson was a Republican during the relevant time period. He was up for election in 2006 and 2010. (DE 20, Complaint ¶ 10.)

By a letter dated November 6, 2009 that was sent to Click and various other county employees, Thompson informed the employees that county severance tax revenues were down and that the employees would be laid off at least until the revenues returned to their former level. In the letter Thompson stated:

> I'm sure by now you've probably heard the coal and mineral tax revenues for Knott County this quarter are far less than expected or budgeted. The coal tax receipts dropped from $630,988.74 in October 2008 to $448,814.02 in October of 2009. The mineral (gas & oil) dropped from $674,792.89 in October 2008 to $186,219.17 in October 2009. That is a decrease of over $670,000.00 in just one quarter. That combined with nearly $500,000 still owed Knott County by FEMA from the May 2009 flooding has put a tremendous burden on county finances. These coal and mineral tax revenues go into the LGEA account which is responsible for the payroll for several county employees. Due to this unexpected decrease in revenue, it is with great anguish that I must lay you off from your position with the county effective November 6, 2009. I sincerely hope this is a temporary situation and that we are able to bring you back to work as soon as revenues return to normal. In the meantime, I do encourage you to take full advantage of unemployment benefits that are available to you.

(DE 48-12, Thompson Letter.)

Click was one of 35 county employees laid off in November 2009. (DE 54-52, Weinberg Aff.; DE 54-5, Nov. 5, 2009 Resolution.) Click alleges that the county and Thompson laid him off and then, in 2011 and 2012, refused to rehire him, not because coal and mineral severance tax revenues had decreased, but because of his support for Democratic candidates running against Thompson in the 2006 and 2010 elections. (DE 20, Complaint ¶¶ 18, 20, 21.)

He asserts a federal claim under 42 U.S.C. § 1983, alleging that the defendants violated his First Amendment right to support political candidates, and also a state-law claim of wrongful discharge. Thompson and the county move for summary judgment in their favor.

## II. Analysis

By an opinion dated October 18, 2012, this Court determined that Click's § 1983 claims based on the 2009 layoff and 2011 failure to hire are time barred but that his § 1983 claim based on the 2012 failure to rehire is timely. *Click v. Thompson*, 898 F. Supp. 2d 927, 933 (E.D. Ky. 2012).

Click then moved to amend his complaint to assert that the 2009 layoff and 2011 failure to rehire were part of a "continuing violation" by Thompson. "When a continuing violation is found, a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citation and quotations omitted).

The Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Id*. "Courts have been extremely reluctant to apply [the continuing-violations] doctrine outside of the context of Title VII." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1105 n. 3 (6th Cir. 1995).

Further, Click's 2009 discharge and the 2011 failure to hire are discrete discriminatory acts, "of which [Click] was immediately aware when they occurred." *Bell v. Ohio State University*, 351 F.3d 240, 248 (6th Cir. 2003). In *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court explicitly stated "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. at 113. The Sixth Circuit has recognized that "[t]he Supreme Court's decision in *Morgan* largely curtailed the continuing-violations theory

3

when applied to 'discrete discriminatory acts.'" *Austin v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007) (citing *Sharpe*, 319 F.3d at 268. Nevertheless, the Sixth Circuit has held that "the continuing-violations theory still applies to discrete discriminatory acts that are part of a 'longstanding and demonstrable policy of discrimination.'" *Id*. (quoting *Sharpe*, 319 F.3d at 268.)

For purposes of this motion, the Court assumes that Click has presented sufficient evidence that, while judge/executive, Thompson implemented and maintained a policy of discharging and refusing to hire supporters of his political opponents.

Click must show that he himself was a victim of this policy. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he was engaged in a constitutionally protected activity; (2) he was subjected to an adverse employment action or deprived of some employment benefit; and (3) his protected conduct was a substantial or motivating factor for the adverse employment decision. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

In their summary judgment motion, the defendants do not dispute that Click engaged in a constitutionally protected activity or that Click was subjected to an adverse employment action. Thus, the issue is whether Click has produced sufficient evidence that his protected conduct was a substantial or motivating factor for the adverse employment decisions.

Summary judgment is appropriate if, taking the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists where there is sufficient evidence for a trier of fact to find for

the non-moving party." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A "mere scintilla" of evidence is not enough to withstand a summary judgment motion. *Id*.

    **A.    Claim against Knott County under § 1983**

Click asserts a claim against Randy Thompson in both his individual and official capacities. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A county can be liable under § 1983 only "where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).

The actions of local officials with "final policy making authority" may subject a county to § 1983 liability. *Adkins v. Board of Educ. Of Magoffin County, Ky.*, 982 F.2d 952, 957 (6th Cir. 1993). Thus, in determining county liability under § 1983, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997) (quoting *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)).

Under Kentucky law, the county judge/executive has the power to appoint and remove county personnel, with the approval of the fiscal court. KRS § 67.710(7). Thus, while the judge/executive nominates or recommends hires and discharges, they are not

final until the fiscal court approves them. The Knott County Administrative Code provides that the "Judge/Executive may, with the simple majority approval of the Fiscal Court temporarily or permanently layoff employees at any time the Judge/Executive has determined that such layoffs would be in the best interest of the County's financial state." (DE 40-8, Knott County Fiscal Court Adm. Code, § 371.4.)

Thus, while Thompson had the authority to recommend layoffs, they could not become final until approved by a majority of the fiscal court. By letter to the fiscal court dated November 4, 2009, Thompson recommended that 35 identified county employees, including Click, be laid off. (DE 54-5, Nov. 5, 2009 Resolution.) The following day, the fiscal court unanimously approved the recommended layoffs by adopting a resolution to "reduce payroll and operating expenses due to the sudden decrease in coal and natural gas severance fund receipts." (DE 54-4, Nov. 5, 2009 minutes; DE 54-5, Nov. 5, 2009 Resolution.)

Accordingly, the fiscal court was the final policymaking authority with regard to Click's 2009 layoff. Click makes no allegations at all against any members of the fiscal court who approved the 2009 layoff. He makes allegations against only Randy Thompson. Thus, his claim against Knott County with regard to his layoff must be dismissed.

The fiscal court was also the final policymaker with regard to the failures to rehire Click in 2011 and 2012. In *Adkins v. Board of Educ. of Magoffin County, Ky.*, 982 F.2d 952 (6th Cir. 1993), the issue before the court was whether the local board of education was a final policymaker with regard to the failure to hire the plaintiff. The court analyzed a Kentucky statute providing that all appointments "shall be made only upon the

recommendation of the superintendent of schools, subject to the approval of the board." *Id*. at 958. The court recognized that the board could not hire certain personnel like the plaintiff without the superintendent's recommendation. It nonetheless determined that the board made final policy with regard to hires because Kentucky law "placed final authority for personnel decisions squarely with the Board." *Id*. at 959.

The court noted that "[i]t could be argued that [the superintendent] was the final policymaker with respect to his decision not to rehire [the plaintiff] rather than making a recommendation for the Board to hire her." *Id*. But the court determined, "this would be a strained formulation. The fact that a person who has authority only to recommend, and whose recommendations can be implemented only upon subsequent approval by a governing body, decides to make no recommendation does not convert the recommender into a final policymaker." *Id*. at 959. Here, as in *Adkins*, by state statute, Thompson only had authority to recommend hires and, thus, he is not the final policymaker with regard to the county's failure to hire any individuals, including Click.

As with his discharge, Click makes no allegations against the fiscal court with regard to the failure to rehire him, but instead has argued that the county should be liable for Thompson's actions. Because Thompson was not a final policymaker with regard to the failure to rehire Click, his claim against the county for that action must be dismissed.

This does not mean that Click has no claim for the failure to hire him or for his discharge. It just means that he has no claim against the county because Thompson's actions cannot be deemed to be the county's actions. Thompson may still be held individually liable for the adverse employment decisions. The Court will next address those claims.

7

### B. Claim against Randy Thompson under § 1983

#### 1) Liability for the layoffs and failures to rehire as a final decisionmaker or influential recommender

Having determined that the fiscal court was the final policymaking authority with regard to Click's 2009 layoff and the 2011 and 2012 failures to rehire, the next issue is whether Thompson can be individually liable for these actions. Generally, "[a]s to causation, only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." *Johnson v. State of Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004).

Thus, with regard to the county's liability, the issue is whether a "final policymaker" carried out the challenged actions, thereby subjecting the county to liability. With regard to the individual's liability, however, the issue is whether the individual was a "final decisionmaker" with regard to the challenged actions. *See Pratt v. City of Lexington, Tenn.*, No. 07-1219, 2008 WL 4206329, at *5, n.7 (W.D. Tenn. 2008). "The 'final policymaker' inquiry addresses who takes actions that may cause the municipality . . . to be held liable for a custom or policy. The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held *individually* liable." *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003). The authority to make the final decision regarding the adverse employment action is necessary in order to establish causation in a retaliation claim. *Pratt*, 2008 WL 4206329, at * 5 (citing *Poppy v. City of Willoughby Hills*, 96 F. App'x 292, 295 (6th Cir. 2004).

In an unpublished decision, the Sixth Circuit has also stated that "an influential recommender can be liable under § 1983 without being the final decisionmaker, if the

8

recommendations are shown to be sufficiently influential." *Ward v. Athens City Board of Education*, 187 F.3d 639, 1999 WL 623730, at *8 (6th Cir. 1999).

With regard to the 2009 layoffs, as discussed, Thompson did not make the final decision. His recommended layoffs had to be approved by the fiscal court. He may nonetheless be held individually liable if he was an "influential recommender." The only evidence in the record, however, is that the fiscal court approved the layoffs because of the decrease in the county's severance tax revenues, not simply because Thompson recommended them. The resolution states the layoffs were approved because "the receipts of coal and natural gas severance funds for the last quarter have decreased dramatically making it impossible for the Court to continue operating as it has in the past." (DE 54-5, Resolution.)

Likewise, the minutes of the fiscal court's meetings during the relevant time period and beyond reflect the fiscal court's continuing concern with the reduction in severance tax revenues and the need to cut expenses. (Treasurer's Reports at DE 54-3, Sept. 16, 2009 minutes; DE 54-4, Nov. 5, 2009 minutes; DE 54-6, Jan. 20, 2010 minutes; DE 54-7, Feb. 17, 2010 minutes; 54-8, April 20, 2010 minutes; DE 54-11, May 19, 2011 minutes; *see also* DE 40-4 to DE 40-6; DE 54-13 to DE 54-15; DE 54-20 to DE 54-24) The affidavits in the record also reflect that the fiscal court approved the layoffs in November 2009 because of the county's decreased tax revenues.[1]

---

[1] Click appears to question whether the county actually experienced any decrease in severance tax revenues during the relevant time period. The decrease in revenues is well documented not only in the fiscal court minutes but in the coal and mineral severance reports in the record. (DE 37-1, Coal and Mineral Severance Reports.) During the time of Click's discharge, for example, the coal severance tax decreased from $2,347,978.53 (7/31/08-4/17/2009) to $1,995,657.30 (7/17/09-4/28/2010). The most recent report in the record indicates that coal severance tax revenues had decreased to $1,381,203.20. As to mineral severance taxes, at the time of Click's discharge, they decreased from $2,290,035.29 (7/30/08 to 4/17/09) to $1,055.129.45 (7/17/09 – 4/28/10). In the most recent report in the record, mineral severance tax

9

Debra Moore, the current finance director for the Knott County Fiscal Court, states in an affidavit that "[o]ver the last several years the coal and mineral monies coming into the county have decreased significantly and this is where a large portion of the county's revenue to operate is taken in. These moneys have never returned to the level that they were prior to October/November 2009." Moore states that the county's financial situation had been discussed during fiscal court meetings for the past several years and that, on various occasions, the former treasurer advised the court to cut spending and that outstanding bills could not be paid due to insufficient funds. (DE 54-51, Moore Aff.)

Current Judge/Executive Zachary Weinberg agrees that "[o]ver the last several years the coal and mineral monies coming into the county have decreased significantly – and continue to decline." Weinberg states that, "[o]ne of the more economic ways to quickly reduce the county's operating expense without cutting off essential services to the county residents is to lay-off all non-essential employees and allow them to draw their unemployment benefits until additional funds are available or their services are needed again." (DE 54-52, Weinberg Aff.) Weinberg states "this is what occurred multiple times as the county's financial condition declined."

Click has produced no evidence that the members of the fiscal court approved the 35 layoffs simply because Thompson recommended them. Accordingly, Thompson cannot be personally liable for them.

As to the failures to hire, however, it appears that Thompson may be personally liable as an "influential recommender." In *Adkins*, discussed above, the plaintiff sued the

---

revenues had decreased to $607,871.82 (7/23/12-4/18/13). Between October 2008 and October 2009, the combined coal and mineral severance taxes had decreased by more than $670,000.00.

county board of education and its superintendent, individually, because he refused to recommend her for employment the following school year. As discussed, the Sixth Circuit determined that the superintendent was not the final policymaker with regard to the failure to hire the plaintiff, and, thus, the county board of education could not be held liable for the superintendent's actions. This was because the superintendent could only recommend appointments to the board but the board could reject them. *Adkins*, 982 F.2d at 958.

The court nonetheless reversed the district court's directed verdict in favor of the superintendent, in his individual capacity, thus indicating that the superintendent could still be deemed the decisionmaker – and thus, personally liable – with regard to the failure to hire. In *Ward v. Athens City Bd. of Educ.*, 1999 WL 623730 (6th Cir. 1999), in discussing *Adkins*, the Sixth Circuit indicated that the superintendent's possible individual liability flowed from the fact that he was an "influential recommender." *Id*. at *8.

Here, Thompson's failure to recommend Click for rehire assured that Click would not be rehired. The Court will assume that this makes Thompson an "influential recommender' with regard to the county's failure to rehire Click, subjecting Thompson to individual liability if he acted unconstitutionally.

### 2) Evidence that Click's protected activity was a substantial or motivating factor in the layoff and the failures to rehire

But even if Thompson could be held personally liable for the failures to rehire and for the 2009 layoff, Click has produced no evidence that Thompson was even aware of any of Click's votes or support for Thompson's opponents.

Click testified that he has served on the executive committee of the Knott County Democratic Party since 2002. (DE 38, Click Dep. at CM-ECF p. 35.) There is no evidence that Thompson knew that Click served in that position but, regardless, Click's claim is not that he was discriminated against because he is a Democrat. Click's counsel made that clear at the April 16, 2014 pretrial conference. Instead, Click's claim is that he was discriminated against because he voted for Thompson's opponents.

Thus, Thompson's knowledge that Click is a Democrat is irrelevant to Click's claim. About 94 percent of the registered voters in Knott County are registered as Democrats. (DE 54-34, Voter Registration Statistics Report.) Thompson necessarily relied on the support and votes of Democrats in order to win elections.

As to Click's support for Thompson's opponents, Click testified that in 2006 he put a sticker on his Jeep in support of Thompson's opponent, Mike Hall. But Click also testified that he drove the Jeep to work only once or twice (DE 38, Click Dep. at CM-ECF pp. 43, 47, 53-55). There is no evidence that Thompson ever saw the sticker.

Click testified he voted for Hall in 2006. (DE 38, Click Dep. at CM-ECF p. 42.) He also testified that that he campaigned door-to-door and voted for Thompson's democratic opponent Ronnie Watts in the 2010 general election. (DE 38, Click Dep. at CM-ECF p. 42.). Click testified that he attended rallies and meetings for Thompson's opponents, presumably in both 2006 and 2010. (DE 38, Click Dep. at 55.)

Thompson testified that he never knew who the county employees voted for in the judge/executive elections and that he did not recall discussing that with Click. (DE 39, Thompson Dep. at CM-ECF pp. 50, 53). Furthermore, Click was not laid off until

November 2009. That is three years after the 2006 election and a year before the 2010 election.

In his response, however, Click asserts that Thompson did not learn of his 2006 vote for Hall until May 2009. Click claims that, at that time, he stated in front of Thompson that he voted for Hall in the 2006 election. (DE 46, Response at 4,11; DE 48, Click Statement at 61-64.) Click alleges this occurred during a recorded statement taken in a lawsuit against Thompson by former county employees Darryl Sparkman and Ralph Dyer. (DE 39, Thompson Dep. at CM-ECF p. 53.)

In his response to the motion for summary judgment, Click asserts that Thompson was present during Click's recorded statement in the Sparkman/Dyer litigation but he cites no supporting evidence. (DE 46, Response at 4.) Thompson asserts in his reply brief that he was not present for this recorded statement. He points out that the transcripts of the statements made by other witnesses in the Sparkman/Dyer litigation note on the cover page that Thompson was present. (DE 54, Reply at 6; 54-35, Hicks Statement; 54-36, Mullins Statement; 54-37, Huff Statement.) The cover page of the transcript of Click's statement does not. (DE 48-2, Click Statement.)

Thompson testified in his deposition that he did not recall Click's recorded statement or being present at it. (DE 39, Thompson Dep. at CM-ECF p. 54, 57.) At the pretrial conference conducted on April 16, 2014, Click's counsel stated that Click testified in his deposition in this case that Thompson was present during the recorded statement. Counsel did not cite the page of the deposition. The Court has reviewed Click's deposition and does not find any statement that Thompson was present for Click's recorded statement in the Sparkman/Dyer litigation.

13

Thompson did testify in his deposition that he thought he knew that Click was a Democrat. (DE 39, Thompson Dep. at CM-ECF p. 51.) But, again, Thompson's knowledge of Click's party affiliation is irrelevant. Click does not claim that Thompson discriminated against him because of his party affiliation.

Thus, Click's claim that Thompson retaliated against him because of his support for Thompson's opponents fails because there is no evidence that Thompson was aware of that support.

Furthermore, even assuming that Thompson was aware of Click's support for Thompson's opponents, Click has not presented any compelling evidence that he was discharged or not rehired because of that support.

As discussed, Click was laid off in 2009 along with 34 other county employees. There is no evidence that all 35 were known supporters of Thompson's opponents. Thus, Click's claim is that he was laid off along with 34 other employees, some of whom supported Thompson's opponents, some of whom did not. This is not evidence that Click was targeted because of his political activities.

Click has submitted the affidavits of four former county employees who state that, from 2005 until 2010, Thompson terminated and/or laid off every single employee of the Knott County parks and road departments who was known to have supported Mike Hall in 2006 or Ronnie Watts in 2010. (DE 48-4 to DE 48-7.) Even assuming that this is true, Click himself makes clear that the layoffs also included employees whose voting records were unknown to Thompson.

The four former county employees also state that Thompson replaced known supporters of his opponents with persons who were not known supporters of his

opponents. But, in Click's case, there is no dispute that the county never hired a Thompson supporter or anyone else to replace him. Instead, the evidence shows that the county contracted with private companies to mow the grass after Click was terminated. County Judge/Executive Weinberg explains that Click's "main duty with the county was to mow grass on a riding mower. This is a seasonal job that may occasionally require additional duties as needed." Weinberg states, "To date, the county still does not have a full time position to place Mr. Click into." ( DE 54-52, Weinberg Aff.)

As evidence that his discharge was politically motivated Click points out that the four former county employees who have submitted affidavits on his behalf all allege that they believe they were terminated by Thompson because of their support for his political opponents. While this may be evidence that Thompson implemented a policy of recommending that his political opponents be discharged, it is not evidence that Click himself was a victim of this policy. If these assertions by former employees were sufficient to establish Click's *prima facie* case, then every county employee terminated for any reason while Thompson was judge/executive has a *prima facie* case of retaliation.

Moreover, these affidavits highlight the lack of evidence in Click's case. Darrell Sparkman, Ralph Dyer, and Bobby Hamilton (DE 48-4 to DE 48-6) allege that they either directly informed Thompson of their support for his opponent or that Thompson directly observed them working for his opponents. They also each allege they were individually targeted for termination. They do not claim their wrongful termination occurred as part of a county-wide layoff. Additionally, Sparkman asserts that he was the youth activity director and that, after he was terminated, Thompson hired a person in that position who was the son of a known Thompson supporter. (DE 48-5, R. Dyer Aff.) Dyer asserts that

15

he was informed that Thompson had an agreement with a third party to fire Dyer for his support for Thompson's opponent. (DE 48-4, Sparkman Aff.) Hamilton asserts that he was fired the day after the election in which he voted for Thompson's opponents. Sparkman was fired about a month after the election.

Whether any of these employees could ultimately prove they were fired in retaliation for their support for Thompson's opponents is not certain. But their affidavits at least constitute evidence that Thompson was aware of their political activity. Click, in contrast, has presented no evidence that Thompson was aware of who Click supported in the 2006 and 2010 elections. Further, the three former employees allege they were fired individually. Click was fired as part of a group of 35 employees, some of whom may have been Thompson supporters, some of whom may not have been.

As evidence that his discharge was politically motivated, Click argues that, by October 2010, every other parks department employee who was laid off in 2009 had been rehired. But Click did not even apply to be rehired in 2010. His counsel made that clear in the pretrial conference. He does not assert any claim with regard to a failure to rehire in 2010. He asserts only a claim with regard to 2011 and 2012.

In addition, Click testified that all of the men he worked with were for Hall or Watts. (DE 38, Click Dep. at CM-ECF pp. 82, 86-87.) The fact that all of these fellow workers were eventually rehired does not provide evidence that Thompson was retaliating against Click for supporting Thompson's opponents.

Moreover, Click states that he was laid off on two prior occasions – by letters dated December 28, 2006 and November 17, 2007. (DE 46, Response at 8; DE 48-8, 48-

9.) He asserts that Thompson rehired him on both occasions. This does not indicate that Thompson had any desire to retaliate against Click.

Click argues that statements by former parks department director Harold Mullins to former employee Phillip Darrell Sparkman expressing displeasure with Sparkman displaying Mike Hall stickers on his truck are evidence that Thompson retaliated against Click. But, statements by Harold Mullins do not provide any evidence as to Thompson's intent to retaliate.

As evidence that the county's failure to rehire him was politically motivated, Click argues that the county did hire some new employees in 2011 and 2012. For this, he relies on the affidavit of Jamie Mosley (DE 48-13, Mosley Aff.), who has served as a Knott County Fiscal Court magistrate since January 2011.

There are a couple of problems with Mosley's affidavit. First, with their reply brief, the defendants submit another Mosley affidavit in which he recants what he said in the first affidavit. (DE 54-1, Mosley Aff.) In the more recent affidavit, Mosley states that the first affidavit was not based on his personal knowledge and that he did not prepare it or even read it before signing it. In this second affidavit, Mosley states that he believes that Click was laid off due to the county's budget and financial problems and because Click was in constant conflict with the former parks director Harold Mullins.

Mosley states that, '[o]ver the last several years the coal and mineral monies coming into the county have decreased significantly and this is where a large portion of the counties revenue to operate is taken in." Mosley states that after Click was laid off, his mowing duties were initially performed by seasonal part-time workers and then contracted out to private parties.

17

Secondly, evidence that the county hired people in 2011 and 2012 does not by itself indicate that Thompson failed to rehire Click for political reasons. There is no evidence that any of the new hires filled Click's prior position or that the new hires were Thompson supporters. Again, the only evidence in the record is that Click's main duty for the parks department was mowing grass and to this day the county has not hired anyone to perform that duty on a full-time, permanent basis as Click did.

In his first affidavit, Mosley asserts that, in 2011, the county received certain sums in a block grant and certain additional revenues from the sheriff's office. He also asserts that, during the relevant time period, Thompson proposed that the county expend sums on a Sportsplex, a trail ride, and a driving range. (DE 48-13, Mosley Aff.) Click asserts that this is evidence that he was terminated for political reasons. But neither this court nor a jury can determine that the county should have spent revenue on filling Click's position rather than on other items.

As evidence that Thompson's failure to rehire him in 2011 was politically motivated, Click points to a statement by Knott County Fiscal Court Magistrate Mark Chaffins. Click asserts that Chaffins stated "I can get your job back, but you['re] going to have to keep your mouth shut." (DE 46, Response at 10, quoting DE 38, Click Dep. at CM-ECF p. 58, lines 8-10.) But Chaffins' statements do not provide evidence of Thompson's intent to retaliate.

For all of these reasons, the § 1983 claim against both Thompson and Knott County must be dismissed.

C. **Wrongful Discharge Claim**

Having dismissed the sole federal claim in this action, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise jurisdiction over Click's state-law claim of wrongful discharge. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims. . . ." *Musson Theatrical Corp. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). The parties did not devote a significant portion of their briefs to the state law claim. Thus, that claim cannot be resolved on this motion and resolution of the claim in this forum would not serve judicial economy. The state-law claim will be dismissed without prejudice.

**III. Conclusion**

For all these reasons, the Court hereby orders as follows:

1) the Defendants' Motion for Summary Judgment (DE 40) is GRANTED;

2) the Plaintiff's retaliation claim under 42 U.S.C. § 1983 is DISMISSED with prejudice; and

3) the Plaintiff's state-law claim of wrongful discharge is DISMISSED without prejudice.

Dated this 6th day of May, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY